# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SARAH CHRISTNER, | ) | No. 73024-0-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF EMPLOYMENT SECURITY, | ) ) ) ) | |
| Respondent. | ) ) | FILED: June 6, 2016 |

TRICKEY, J. — Sarah Christner appeals the superior court's order affirming the decision of the Commissioner of the Washington State Employment Security Department to deny her claim for unemployment compensation benefits. The Commissioner properly concluded that Christner's conduct evinced a deliberate violation of standards of behavior that her employer had the right to expect of her. Because this constitutes disqualifying misconduct under RCW 50.04.294(1)(b), we affirm.

## FACTS

In November 2012, Christner began working as a full-time receptionist for the Washington Center for Pain Management (WCPM) in Bellevue, Washington. WCPM operates multiple clinics and requires a receptionist at each clinic location. A policy at WCPM requires that all requests for time off be submitted in writing at least two weeks in advance in order to "ensure that absences will be scheduled in advance whenever possible."[1]

Over the course of her employment, Christner made several requests for

---

[1] Clerk's Papers (CP) at 132.

time off. Many of these requests were made with short notice. Christner's supervisor, Sarah Bundy, testified that Christner's requests were very difficult to accommodate because WCPM would have to "scramble" to find coverage.[2] Bundy believed that Christner's requests were due to medical appointments.

On September 26, 2013, Bundy e-mailed Christner. She acknowledged that Christner had health conditions requiring her to go to the doctor often. But she stated that this was "becoming very difficult with scheduling, especially when there is not adequate time given prior to the request."[3] She requested that Christner provide a doctor's note projecting the number of anticipated future doctor appointments. She also stated that it would be preferable if Christner could schedule doctors' appointments without missing work.

Following this e-mail, Christner continued to request time off on short notice. On October 10, 2013, Christner requested time off on October 23, 2013 for personal reasons. She did not receive a response.

On October 18, 2013, Christner e-mailed Bundy. She acknowledged that it had "been increasingly difficult to accommodate as many time off requests as [she] ha[s] requested in such short notice."[4] She disclosed that her long-term career objective was to pursue employment in law enforcement. She stated that most of her time off requests were for medical appointments but, more recently, she had been requesting time off "for personal matters regarding appointments for other employment."[5] She stated that she would make requests for time off for

---

[2] CP at 102.
[3] CP at 188.
[4] CP at 155.
[5] CP at 155.

2

medical appointments at least two weeks in advance. But she explained that the jobs for which she was applying involved exams that were scheduled with short notice and that this was beyond her control.

Bundy responded by requesting that Christner give two weeks' notice and resign. She stated, "We can accommodate during those two weeks and find a replacement. However, we cannot continue to accommodate these short notice time off requests beyond the two weeks as we need a reliable full time front desk receptionist."[6] That same day, Christner tendered her resignation by e-mail. Christner continued to work at WCPM for two more weeks. Her last day of employment was Friday, November 1, 2013.

Christner subsequently applied for unemployment compensation benefits. She reported that she was discharged because her employer was unable to accommodate short notice time off requests any further. In contrast, WCPM reported that Christner voluntarily resigned to pursue a position with another employer and required time off to do preliminary tests for the new employer.

The Employment Security Department adjudicated the job separation as a discharge and granted Christner benefits on the basis that she was discharged for reasons that did not constitute misconduct. An administrative law judge (ALJ) reversed the Department's decision. The ALJ concluded that Christner was not entitled to unemployment benefits because she was discharged for reasons constituting misconduct.

The Commissioner affirmed the ALJ's order. In doing so, the Commissioner adopted the ALJ's findings of fact and conclusions of law and

---

[6] CP at 156.

3

clarified that Christner committed disqualifying misconduct under RCW 50.04.294(1)(b). Christner subsequently petitioned for judicial review to the Snohomish County Superior Court. The superior court affirmed the Commissioner's decision. This appeal followed.

ANALYSIS

Judicial review of a decision made by the Commissioner is governed by Washington's Administrative Procedure Act (APA), chapter 34.05 RCW. Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). This court sits in the same position as the superior court and applies the standards of the APA directly to the administrative record before the agency. Tapper, 122 Wn.2d at 402. This court reviews the Commissioner's decision, not the decision of the ALJ, except to the extent that the Commissioner adopts the ALJ's findings of fact. Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008).

The Commissioner's decision is prima facie correct. RCW 50.32.150. The party challenging the agency's action bears the burden of demonstrating its invalidity. RCW 34.05.570(1)(a). The APA provides nine bases for overturning agency orders in adjudicative proceedings. RCW 34.05.570(3)(a)-(i). These include when the reviewing court determines that the Commissioner erroneously interpreted or applied the law, the order is not supported by substantial evidence, or the order is arbitrary or capricious. RCW 34.05.570(3)(d), (e), (i).

We review findings of fact to determine whether they are supported by substantial evidence. Barker v. Emp't Sec. Dep't, 127 Wn. App. 588, 592, 112 P.3d 536 (2005). Evidence is substantial if it is "sufficient . . . to persuade a

reasonable person of the truth of the declared premise." Barker, 127 Wn. App. at 592. Unchallenged findings are verities on appeal. Fuller v. Emp't Sec. Dep't, 52 Wn. App. 603, 605, 762 P.2d 367 (1988). We view the evidence and reasonable inferences therefrom in the light most favorable to the party who prevailed at the administrative proceeding below. Kirby v. Emp't Sec. Dep't, 185 Wn. App. 706, 713, 342 P.3d 1151 (2014), review denied, 183 Wn.2d 1010, 352 P.3d 188 (2015).

We review de novo questions of law. Tapper, 122 Wn.2d at 403. We give substantial weight to the agency's interpretation of the statute it administers. Smith v. Emp't Sec. Dep't, 155 Wn. App. 24, 32, 266 P.3d 263 (2010).

Whether a claimant engaged in misconduct is a mixed question of law and fact. Tapper, 122 Wn.2d at 402. Accordingly, this court determines the law independently and then applies the law to the facts as found by the agency. Hamel v. Emp't Sec. Dep't, 93 Wn. App. 140, 145, 966 P.2d 1282 (1998).

### Denial of Unemployment Benefits

Christner argues that the Commissioner erroneously concluded that she is disqualified from receiving unemployment benefits because she committed disqualifying misconduct under RCW 50.04.294(1)(b). We disagree.

The Employment Security Act, Title 50 RCW, exists to provide compensation to individuals who are involuntarily unemployed "through no fault of their own." RCW 50.01.010. An individual is disqualified from receiving unemployment benefits if he or she is discharged for misconduct connected with his or her work. RCW 50.20.066(1).

RCW 50.04.294(1) provides a non-exhaustive list of "[m]isconduct." Under RCW 50.04.294(1)(b), misconduct includes "[d]eliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee."

The Commissioner concluded that Christner committed misconduct under this subsection because her conduct "evinced a deliberate violation and disregard of standards of behavior which an employer has the right to expect of an employee."[7] Adopted findings of fact 5, 6, and 7 support the Commissioner's conclusion.[8]

In finding of fact 5, the Commissioner found:

> On September 26, 2013, [Christner] received a final warning for repeatedly requesting time off on short or no notice. The claimant did not disclose to the employer that she was requesting time off to participate in interviews for other employers in addition to requesting time off due to illness. The employer believed that all of the requests for time off were due to illness.[9]

This finding of fact is supported by Bundy's and Christner's testimony. Bundy testified that WCPM's policy required two weeks' advance notice for time off requests. She testified that Christner would generally give about one week's notice, which was not adequate when the requests were on a regular basis. Bundy believed that Christner's requests were only for medical reasons. Bundy testified that she had conversations with Christner about needing at least two weeks' notice, that she gave Christner verbal and written warnings, and that she made it "very clear that these accommodations were becoming very, very difficult

---

[7] CP at 178.
[8] Christner assigns error to these findings of fact, but they are supported by substantial evidence in the record.
[9] CP at 162.

. . . that this was becoming an issue."[10]

Christner confirmed that she received a final warning[11] from Bundy by e-mail on September 26. In relevant part, the e-mail stated: "I realize you have some health conditions currently and are needing to go to the doctor often; however, this is becoming very difficult with scheduling, especially when there is not adequate time given prior to the request."[12]

Overall, Bundy's and Christner's testimony reveals that WCPM made it clear to Christner that her repeated requests for time off on short notice posed difficulties for WCPM. Their testimony also reveals that WCPM made it clear that it expected Christner would not repeatedly request time off on short notice while she was on notice of the hardships it created.

In finding of fact 6, the Commissioner found:

> [Christner's] repeated requests for time off created a hardship on the employer and staff because the employer would have to find someone to cover [Christner's] position on short or no notice from the claimant.[13]

This finding of fact is supported by the September 26 e-mail and testimony from WCPM employees. The September 26 e-mail stated that Christner's requests were "very difficult with scheduling, especially when there is not adequate time given prior to the request."[14] Bundy testified that a request on

---

[10] CP at 97, 99.
[11] Christner argues that the Commissioner "erroneously mischaracterized" this e-mail as a "'final warning,'" because WCPM did not put her on notice that her job was in jeopardy. Appellant's Opening Br. at 3, 38. But RCW 50.04.294(1)(b) does not require the employer to have issued a "final warning" in order to establish misconduct. Thus, the Commissioner's characterization of the communication is not material to the analysis.
[12] CP at 120.
[13] CP at 162.
[14] CP at 188.

short notice would require her to "scramble to find another receptionist for coverage" or that she would have to provide coverage herself.[15] Similarly, the Chief Executive Officer, Jae Lee, testified that short notice requests were difficult to accommodate because WCPM has six different sites and they would have to shift all of their front desk coverage.

Finally, in finding of fact 7, the Commissioner found:

Following the final warning, [Christner] requested time off on approximately five separate occasions in a 5-week period.[16]

Christner's testimony supports this finding. Christner testified before the ALJ that between September 26 and November 1, she requested time off on five or six occasions. It is clear from the record that this finding was in reference to five occasions where Christner did not provide adequate notice. Christner testified that some of these requests concerned medical issues and others concerned potential future employment.

Taken together, these findings of fact support the Commissioner's conclusion that Christner deliberately violated a standard of behavior that WCPM had the right to expect from Christner. WCPM had the right to expect that Christner would not repeatedly request time off on short notice while she was on notice that such requests created a hardship for her employer. WCPM communicated this expectation to Christner by informing her of the difficulties it encountered when she requested time off on short notice. Following this communication, Christner continued to request time off without providing adequate notice. Based on this conduct, the Commissioner properly concluded

---

[15] CP at 102.
[16] CP at 162.

8

that Christner committed disqualifying misconduct under RCW 50.04.294(1)(b).

Christner argues that WCPM cannot show a standard of behavior it had the right to expect "[w]ithout documentary evidence of an existing policy."[17] Because she fails to cite any authority that documentary evidence is necessary to establish a "standard[] of behavior which the employer has a right to expect of an employee" under RCW 50.04.294(1)(b), we reject this argument.

Christner asserts that WCPM did not have the right to expect that she would not repeatedly request time off on short notice, because it routinely approved and accommodated her multiple short notice requests. This argument is not convincing. Notwithstanding the fact that WCPM accommodated Christner's requests, WCPM made it clear to Christner that it expected that she would not repeatedly request time off on short notice. Moreover, WCPM accommodated Christner's requests because it was under the mistaken impression that they were for medical appointments. WCPM only later found out that some of these requests were for job seeking activities. Christner cites no relevant authority that, under these circumstances, WCPM waived its objection to Christner's behavior.[18]

Christner argues that the Commissioner improperly concluded that she committed misconduct because WCPM failed to demonstrate that her short notice requests were detrimental to its operations. She contends that WCPM

---

[17] App. Op. Br. at 31.
[18] Christner also asserts that WCPM waived its argument that Christner committed misconduct, because it kept her employed for two weeks after the discharge. Because she similarly fails to cite any relevant authority to support this argument, we reject it.

established only that it was "becoming difficult"[19] to accommodate her requests and acted preemptively by discharging her for "anticipated future conduct."[20] Christner's argument is not well taken. Bundy's e-mail, Bundy's testimony, and Lee's testimony make it abundantly clear that Christner's repeated requests for time off on short notice caused scheduling difficulties and were detrimental to WCPM's operations.

Christner argues that the Commissioner committed legal error when the Commissioner failed to address exceptions to misconduct contained in RCW 50.04.294(3)(a). Under RCW 50.04.294(3)(a), misconduct does not include "[i]nefficiency, unsatisfactory conduct, or failure to perform well as a result of inability or incapacity." Christner argues that because most of her absences were due to medical issues, her conduct was excused because of "inability."[21] She cites no relevant authority to support this argument. Thus, it is not persuasive.

Christner next argues that the Commissioner overlooked three procedural errors that constituted arbitrary and capricious action and violated her due process rights. Even if these arguments are properly raised, they have no merit.

First, Christner asserts that the Notice of Hearing was deficient and did not give notice of the specific statute she would have to defend against. As Christner points out, the notice did not identify RCW 50.04.294, the definitional statute that sets forth specific examples of misconduct. But the notice identified RCW 50.20.066, the misconduct statute. This citation was sufficient to put Christner on

---

[19] Appellant's Opening Br. at 36.
[20] Appellant's Opening Br. at 31, 35; Appellant's Reply Br. at 6.
[21] Appellant's Opening Br. at 42.

notice that she was to defend against allegations of misconduct.

Second, Christner asserts that she was not offered the opportunity to cross-examine two witnesses. But this is not borne out by the record. Accordingly, we reject this argument.

Third, Christner asserts that two items of documentary evidence were not properly admitted and that the Commissioner should have reopened the record after receiving this evidence. Because Christner fails to support this assertion with any persuasive authority or argument, we reject it.

Finally, Christner argues that the Commissioner misinterpreted and misapplied the law to the facts of this case when the Commissioner concluded that she committed misconduct under RCW 50.04.294(1)(b).[22] She relies on the Department's *Unemployment Insurance Resource Manual*,[23] which she submitted as supplemental authority in this appeal.[24] Because this court must give substantial weight to the agency's interpretation of the statute it administers, Christner asserts that this court should give substantial weight to this manual.

This manual contains illustrative examples from court rulings and decisions of the Commissioner regarding statutes the Department administers. Relevant to this case, the manual provides the following examples of misconduct under RCW 50.04.294(1)(b): coming to work under the influence of illegal drugs

---

[22] Christner also presents arguments about other subsections of RCW 50.04.294. But because the Commissioner relied only on RCW 50.04.294(1)(b) when making the misconduct determination, we do not address these other statutory provisions.

[23] Appellant's Statement of Add'l Auth. at 2.

[24] The Department urges this court to disregard the supplemental document, asserting that it is evidence not properly before this court. For purposes of analysis, we will assume that this document is properly before us.

or alcohol; stealing from the employer; disrupting the employer's operations without being provoked; "impudence, insolence, disrespectfulness, or rudeness to one's supervisor"; and discrimination or conduct that is "improper, disruptive or unwanted," such as assault and sexual attention.[25] Based on these examples, Christner asserts that misconduct under this subsection involves universal standards of behavior for which no warning or notice is required. She further contends that her behavior is not comparable to the examples in the manual and "simply does not rise to that level."[26]

We are not persuaded by this argument. The examples of misconduct in the manual are illustrative, not exhaustive. As we discussed earlier in this opinion, WCPM had the right to expect that Christner would not repeatedly request time off on short notice while she was on notice that this created a hardship for her employer. A deliberate violation and disregard of that standard of behavior constitutes misconduct under RCW 50.04.294(1)(b) and is not inconsistent with the other examples provided in the manual. The Commissioner did not misinterpret or misapply the law to the facts of this case.

## Attorney Fees

Christner requests attorney fees based on RCW 50.32.160, RCW 50.32.100, and RCW 4.84.010. Because we affirm the decision of the Commissioner and Christner is not the prevailing party, we decline Christner's request for fees under these statutes.

---

[25] Appellant's Statement of Additional Auth. at 4 (Emp't Sec. Dep't, Unemployment Insurance Resource Manual sec. 5440).
[26] Appellant's Supp. Br. on Limited Issues at 9.

Affirmed.

_Trickey, ACJ_

WE CONCUR:

_Spearman, J._          _Cox, J._